1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| MICHAEL LOUIS FOSTER, | Case No.  1:08-cv-01849-LJO-SKO PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANT'S MOTION TO FILE AMENDED DECLARATIONS BE GRANTED AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT DENIED |
| v. | |
| A. ENENMOH, | |
| Defendant. | (Doc. 74 and 87) |
| | TWENTY-DAY OBJECTION DEADLINE |
| _____/ | |

11
12
13
14
15
16
17

## I.    **Procedural History**

18
19
20
21
22
23

Plaintiff Michael Louis Foster ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on December 3, 2008.  This action is proceeding on Plaintiff's second amended complaint ("complaint"), filed on September 17, 2009, against Defendant Enenmoh ("Defendant") for acting with deliberate indifference to Plaintiff's serious medical needs, in violation of the Eighth Amendment of the United States Constitution.

24
25
26
27

On October 1, 2012, Defendant filed a motion for summary judgment.  After obtaining extensions of time, Plaintiff filed an opposition on December 3, 2012, and Defendant filed a reply on December 28, 2012.  The motion has been submitted upon the record without oral argument.  Local Rule 230(*l*).

28

1  II.     **Summary Judgment Standard**

2          Any party may move for summary judgment, and the Court shall grant summary judgment

3  if the movant shows that there is no genuine dispute as to any material fact and the movant is

4  entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a) (quotation marks omitted);

5  *Washington Mutual Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011).   Each party's position,

6  whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular

7  parts of materials in the record, including but not limited to depositions, documents, declarations,

8  or discovery; or (2) showing that the materials cited do not establish the presence or absence of a

9  genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.

10 Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).   The Court may consider other materials in the

11 record not cited to by the parties, although it is not required to do so.   Fed. R. Civ. P. 56(c)(3);

12 *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord*

13 *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

14         Defendant does not bear the burden of proof at trial and in moving for summary judgment,

15 he need only prove an absence of evidence to support Plaintiff's case.   *In re Oracle Corp.*

16 *Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S.

17 317, 323, 106 S.Ct. 2548 (1986)).   If Defendant meets his initial burden, the burden then shifts to

18 Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial."   *In re*

19 *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex Corp.*, 477 U.S. at 323).   This requires Plaintiff to

20 "show more than the mere existence of a scintilla of evidence."   *Id.* (citing *Anderson v. Liberty*

21 *Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

22         However, in judging the evidence at the summary judgment stage, the Court may not make

23 credibility determinations or weigh conflicting evidence, *Soremekun v. Thrifty Payless, Inc.*, 509

24 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all

25 inferences in the light most favorable to the nonmoving party and determine whether a genuine

26 issue of material fact precludes entry of judgment, *Comite de Jornaleros de Redondo Beach v.*

27 *City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted),

28 *cert. denied*, 132 S.Ct. 1566 (2012).   The Court determines *only* whether there is a genuine issue

1   for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se

2   prisoner.  *Thomas v. Ponder*, 611 F3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations

3   omitted).

4   **III.    Discussion**

5            **A.        Summary of Plaintiff's Allegations**[1]

6            Plaintiff, who was an inmate at the California Substance Abuse Treatment Facility and

7   State Prison ("CSATF") in Corcoran, California at the time of the relevant events, alleges that he

8   was successfully treating his constipation with Metamucil and Defendant Enenmoh renewed his

9   prescription at the end of November 2006.[2]  (Doc. 21, 2nd Amend. Comp., p. 6, ¶¶7, 8.)  However,

10  when Plaintiff went to pick up his prescription, he was instead given fiber tablets.  (*Id.*, ¶8.)

11  Plaintiff finished the prescribed fiber tablets, but they did not work and his constipation worsened.

12  (*Id.*, ¶9.)  Plaintiff saw Defendant Enenmoh again on January 11, 2007, and he reported that he

13  received fiber tablets instead of Metamucil, which did not work.  (*Id.*, ¶10.)  Plaintiff said his

14  constipation had worsened, but Defendant Enenmoh told him he could no longer receive

15  Metamucil because it was now non-formulary.  (*Id.*)

16           Plaintiff continued to submit medical care slips and complain to Defendant Enenmoh that

17  his constipation was worsening, and that he was having stomach pains and pain in the areas of his

18  hernia and rectum from straining.  (*Id.*, ¶11.)  Plaintiff was having a bowel movement every three

19  to four days at that point.  (*Id.*)

20           Defendant Enenmoh refused to order Metamucil and told Plaintiff to keep taking the fiber

21  tablets.  (*Id.*, ¶12.)  On April 3, 2007, Defendant Enenmoh ordered milk of magnesia.  (*Id.*)

22           When Plaintiff next saw Defendant Enenmoh, Plaintiff reported that the milk of magnesia

23  gave him diarrhea followed by constipation.  (*Id.*, ¶13.)  Defendant Enenmoh said he could not

24  

25  [1] Plaintiff's complaint is verified and therefore, his allegations constitute evidence where they are based on personal
    knowledge of facts admissible in evidence.  *Jones v. Blanas*, 393 F.3d 918, 922-23 (9th Cir. 2004).  As discussed in
26  section III(E)(1), Plaintiff's lay opinion on issues which require medical expertise is not admissible.  Fed. R. Evid.
    701, 702.  This section merely summarizes Plaintiff's allegations and does not constitute a ruling as their admissibility
27  as evidence.

28  [2] Plaintiff is now at High Desert State Prison in Susanville, California.

prescribe Metamucil and told Plaintiff he should take more fiber tablets.  (*Id.*, ¶14.)  Plaintiff took two fiber tablets three times a day as directed, but his abdominal pain and constipation increased. (*Id.*, ¶15.)

Plaintiff saw Defendant Enenmoh again on November 7, 2007, and reported that his constipation continued and he was experiencing pain in his flank and hernia, and down his leg and back.  (*Id.*, ¶16.)  Defendant Enenmoh refused to order anything other than fiber tablets and docusate stool softener, but he prescribed Ciprofloxacin, an antibiotic, for Plaintiff's flank pain. (*Id.*)  Defendant Enenmoh also ordered an abdominal x-ray and an ultrasound.  (*Id.*)

Plaintiff took the antibiotics and then returned to see Defendant Enenmoh, informing him that his flank pain was worse and his constipation and other pain continued.  (*Id.*, ¶17.)  Defendant Enenmoh ordered a CT scan and a urology consultation.  (*Id.*, ¶18.)

On December 5, 2007, Plaintiff again saw Defendant Enenmoh.  (*Id.*, ¶19.)  The results of Plaintiff's x-ray, ultrasound, and CT scan were back, and he was diagnosed with kidney stones, which is a build-up of calcium.  (*Id.*)  Plaintiff alleges that Defendant Enenmoh did not tell him his pelvis was calcified and Defendant still refused to order an effective medication for Plaintiff's constipation, instead telling him to keep taking the fiber tablets.  (*Id.*)

Plaintiff told Defendant Enenomh that the directions on the bottle of fiber tablets said to stop taking them if you have abdominal pain, but Defendant told him to continue taking the tablets because they were not the cause of his pain.  (*Id.*, ¶20.)  Plaintiff complied with the directive.  (*Id.*)

Between February 15, 2008, and September 2, 2008, Plaintiff saw other health care providers.  (*Id.*, ¶¶22-36.)  Finally, on September 2, 2008, one of those providers, Dr. Raman, ordered Metamucil for Plaintiff, but it was denied by Defendant Enenmoh, who by then was the Chief Medical Officer.  (*Id.*, ¶¶36, 37.)

On October 16, 2008, Dr. Raman reordered the Metamucil, but Plaintiff received neither the medication nor a denial of the medication.  (*Id.*, ¶39.)

On January 14, 2009, Plaintiff saw L. Peters, a Physician Assistant, who told him that his pelvic pain was caused by calcification and showed him the November 26, 2007, x-ray results. (*Id.*, ¶42.)  This was the first time Plaintiff was told his pelvis was calcified.  (*Id.*)

4

Plaintiff stopped taking the fiber tablets because he knew they contained a large amount of calcium. (*Id.*, ¶43.) About a month later, the pain in Plaintiff's flank and groin and down his leg began to go away, although it still flared at times. (*Id.*, ¶44.) Plaintiff's abdominal pain, hernia pain, and rectal pain due to hard stools continued. (*Id.*)

In July of 2008, Plaintiff detected a lump in his neck, which was diagnosed as a tumor. (*Id.*, ¶45.) Plaintiff believes the tumor was caused by his constipation: a build-up of old stool that reached his neck. (*Id.*)

Finally, Plaintiff alleges that he still suffers from chronic constipation, he goes three to four days without having a bowel movement, and he has pain in his abdomen, hernia, and rectum. (*Id.*, ¶46.)

**B.      Summary of Defendant's Facts**[3]

Plaintiff has had constipation, a condition which occurs when bowel movements become difficult or less frequent, for many years. (Doc. 87-3, Enenmoh Decl., ¶¶4, 5.) Common causes for constipation include inadequate water or fiber intake, a disruption in regular diet or routine, inadequate activity or exercise, resisting the urge to have a bowel movement, overuse of laxatives, and/or use of certain pain medications; and the main treatment for constipation involves increasing water and fiber intake. (*Id.*, ¶4.)

Defendant Enenmoh was Plaintiff's primary care provider in 2006 and 2007, and he treated Plaintiff for occasional complaints of constipation, ordering different medications to treat Plaintiff's complaints of difficult bowel movements. (Def. Undisputed Fact 2; Enemoh Decl., ¶3.) On June 12, 2006, Plaintiff sought treatment from Defendant Enenmoh, who prescribed Colace (docusate sodium), a stool softener used to relieve constipation, and on July 11, 2006, Defendant Enenmoh ordered fiber tabs for Plaintiff. (DUF 2, 3.)  On January 5, 2007, Defendant Enenmoh renewed Plaintiff's prescription for fiber tabs, and on February 14, 2007, Defendant Enenmoh ordered Metamucil for Plaintiff's constipation. (DUF 5, 6.)

---

[3] Defendant Enenmoh and Dr. Barnett's declarations submitted in support of Defendant's motion for summary judgment lacked a complete verification statement, and on December 6, 2012, Defendant filed a motion seeking leave to file amended declarations which included the words "that the foregoing is true and correct." (Doc. 87.) Because the changes are not substantive, there is no prejudice to Plaintiff in allowing the amended declarations and the Court recommends the motion be granted.

1    Metamucil is the brand name for a pharmacologic formulation of Psyllium, a plant species

2 whose seeds may be used to increase the amount of fiber in the diet.  (Doc. 87-2, Barnett Decl.,

3 ¶6.)  The Psyllium seed substance in Psyllium is not digested in the small bowel and the material

4 passes on to the larger bowel, where it absorbs excess water and become bulkier, creating a larger

5 volume of stool mass which aids in evacuation of the bowels.  (*Id.*)  Fiber tablets may contain

6 Psyllium or inulin, another fiber found in Metamucil product; and physicians may also prescribe

7 synthetic fiber or bulk increasing agents, including polycarbophil, which is found in Fibercon

8 tablets.  (*Id.*, ¶7.)  Fiber tablets are a bulk-forming laxative which works by increasing the amount

9 of water in the stool, making the stool softer and easier to pass, and in medical literature, fiber

10 tablets are considered the equivalent of Metamucil.  (Enenmoh Decl., ¶7; Barnett Decl., ¶8.)  Fiber

11 tabs relieve constipation in similar fashion as Metamucil, as both have been clinically shown to

12 provide positive results; and fiber tabs do not cause kidney stones or calcification of the pelvis.

13 (DUF 4, 11.)

14    While Plaintiff said that Metamucil worked well for him, CDCR removed Metamucil from

15 the prison's formulary in 2007.  (DUF 7.)  A formulary provides guidelines regarding which

16 medications are preferred by the California Department of Corrections and Rehabilitation

17 ("CDCR") for the purpose of controlling costs of service.  (Barnett Decl., ¶9.)  In order to achieve

18 efficiencies of scale and cost control, CDCR reasonably chooses among a variety of similar drug

19 therapies that have been demonstrated to work equally well.  (*Id.*)  CDCR physicians are bound to

20 follow the formulary unless it is in conflict with patient welfare, and if physicians expanded the

21 menu at the demand of patients in the absence of objective evidence of medical necessity,

22 increased costs would threaten to deplete the budget and compromise the ability to provide other

23 necessary care.  (*Id.*, ¶¶9, 10.)

24    Therefore, as a non-formulary drug, Metamucil could only be prescribed to inmates where

25 there was a medical indication for doing so and the alternatives had been proven not to work.

26 (DUF 8.)  Defendant Enenmoh, like all other CDCR medical providers, was required to follow the

27 directives concerning non-formulary medications, and Metamucil is but one of many options to

28 improve bowel regularity and it does not work uniquely.  (DUF 9; Barnett Decl., ¶11.)

1    Fiber tabs remained formulary, however, and on April 2, 2007, Defendant Enenmoh

2 ordered fiber tabs for Plaintiff in place of Metamucil.  (DUF 10; Enenmoh Decl., ¶10.)

3    On October 10, 2007, in response to Plaintiff's complaint of a bloated abdomen and

4 occasional constipation, Defendant Enenmoh prescribed Simethicone for Plaintiff.   (DUF 12.)

5 Defendant Enenmoh also ordered an abdominal ultrasound scan to rule out gallbladder disease and

6 a kidney infection; a chemistry 20 test, which is a comprehensive metabolic panel showing

7 electrolytes, liver and kidney function, and diabetes-related complications; a complete blood count

8 test, which is used as a general health screening; a TSH test, which evaluates thyroid function

9 and/or symptoms of hyper or hypothyroidism; a fecal fat test, which measures the amount of fat in

10 the stool and is an indicator of liver, gallbladder, pancreas, and kidney function; a urinalysis,

11 which detects kidney disorders and chronic urinary tract infections; and a stool ova and parasites

12 exam, which detects parasites or eggs associated with intestinal infections.  (DUF 12; Enenmoh

13 Decl., ¶12.)

14    With the exception of the ultrasound scan, which was performed on November 29, 2007,

15 all of Plaintiff's test results were essentially within normal limits and did not indicate that Plaintiff

16 was suffering from any identifiable medical condition that would have caused his constipation or

17 abdominal pain. (DUF 13.)

18    On November 20, 2007, in response to Plaintiff's complaints of severe abdominal pain,

19 Defendant Enenmoh ordered additional tests, including a kidney, ureter, and bladder ("KUB")

20 study, which is an abdominal x-ray used to detect kidney stones and diagnose some

21 gastrointestinal disorders, including constipation.  (DUF 14.)  Dr. Enenmoh also elevated the

22 referral priority of Plaintiff's ultrasound scan to urgent based on Plaintiff's statements that his

23 condition had gotten worse.  (*Id.*)

24    The results of the tests ordered on November 20, 2007, with the exception of the

25 ultrasound scan, were all essentially within normal limits and did not indicate that Plaintiff was

26 suffering from any identifiable medical condition that would have caused his constipation or

27 abdominal pain.  (DUF 15.)

28 ///

1    On November 27, 2007, Plaintiff was seen by Defendant Enenmoh for abdominal pain and

2  Defendant noted that the KUB results were unremarkable, meaning the x-ray showed no

3  abnormalities.  (Enenmoh Decl., ¶17.)

4    Plaintiff had a CT scan on November 29, 2007,  and it showed that Plaintiff had a small

5  renal calculus (kidney stone) and kidney cyst, and that his spleen was slightly enlarged.  (DUF

6  16.)  Plaintiff's liver, gallbladder, pancreas, adrenal glands, stomach, small bowel, and pelvis were

7  all normal.  (*Id.*)

8    On December 5, 2007, Defendant Enenmoh again examined Plaintiff regarding the right

9  flank pain and referred Plaintiff to see a urologist regarding the kidney stone.  (DUF 17.)

10    In January 2008, Defendant Enenmoh became the Chief Medical Officer ("CMO") at

11  CSATF and he no longer provided direct patient care to Plaintiff.  (DUF 18.)  After Defendant

12  Enenmoh's appointment as CMO, Plaintiff continued to complain of constipation and his medical

13  care providers offered him various medications for his condition, but he specifically requested that

14  he be given Metamucil and claimed that no other medication had worked for him.  (DUF 19.)

15  However, Plaintiff's providers could not prescribe non-formulary Metamucil for him in the

16  absence of objective evidence of medical necessity.  (DUF 8, Enenmoh Decl., ¶22; Barnett Decl,

17  ¶¶9, 10.)

18    In September 2008, Defendant Enenmoh, as CMO, reviewed a request by Plaintiff's

19  treating physician to prescribe Metamucil to Plaintiff.  (DUF 21.)  Defendant Enenmoh denied the

20  request to prescribe Metamucil to Plaintiff because he believed that there was no medical reason to

21  prescribe it over other efficacious options offered by the CDCR.  (DUF 22.)  In medical literature,

22  fiber in the form of fiber tabs is considered equivalent to Metamucil, and various studies have

23  shown that there is no significant difference in efficacy between the active ingredients in Metmucil

24  and the fiber tabs Plaintiff was given for his constipation.  (*Id.*)

25    With the exception of minor internal hemorrhoids, Plaintiff's normal physical

26  examinations, constancy of weight ranging between 178 and 184 pounds, lack of clinical

27  deterioration signs, and normal laboratory test results indicated that Plaintiff did not suffer from

28  severe constipation or a serious medical condition.  (DUF 23.)  Plaintiff mostly reported little or

1    no pain associated with his constipation, and while Metamucil has been available to Plaintiff for

2    purchase since at least the beginning of 2012, he has not ordered it.  (DUF 24, 25.)

3           Plaintiff has been offered many treatments for his constipation, including milk of

4    magnesia, fiber tabs, Colace, fleets enema, and Lactulose; and he has been repeatedly counseled

5    regarding optimal bowel habits including increasing fluids and exercise, but by 2008 or 2009, he

6    stopped taking the prescribed fiber tabs altogether after he incorrectly assumed that they caused

7    his flank pain and he refused other medication offered to him.  (DUF 20, 26, 27, 28.)  Although

8    Plaintiff was not provided with Metamucil, he did not suffer from extraordinary constipation and

9    the treatment he was provided was appropriate.  (Barnett Decl., ¶3.)  The therapies would likely

10   have been effective if Plaintiff cooperated, but he did not follow directions with respect to

11   medication and he refused to comply with his medical providers' advice.  (*Id.*, ¶13.)

12          **C.     Plaintiff's Response**[4]

13          In his declaration submitted in support of his opposition, Plaintiff attests that he was

14   treated by Defendant Enenmoh from June 2006, approximately, through December 31, 2007.

15   (Doc. 80, Foster Decl., ¶2.)  Metamucil worked well to relieve Plaintiff's constipation every time

16   he took it and he relayed that to Defendant Enenmoh.  (*Id.*, ¶8.)  Plaintiff took Colace and fiber

17   tabs as instructed by Defendant Enenmoh, and he took fiber tabs from 2006 to 2009, but they did

18   not help and he continued to suffer from constipation.  (*Id.*, ¶¶3, 4.)  Plaintiff also tried Colace and

19   milk of magnesia, but they did not relieve his constipation and milk of magnesia gave him

20   diarrhea.  (*Id.*, ¶9.)

21          In 2007, Plaintiff began having abdominal pain, flank pain, pelvic pain, and pain running

22   down his leg.  (*Id.*, ¶5.)  After complaining to Defendant Enenmoh for approximately three

23   months, Defendant ordered some tests.  (*Id.*, ¶6.)  Plaintiff questioned Defendant Enenmoh about

24   _____

25   [4] Plaintiff's request for judicial notice of the Ninth Circuit's decision affirming in part and reversing in part
     the Court's decision dismissing this action at the screening stage is granted in as much as the Court may
26   take judicial notice of court records.  *United States v. Howard*, 381 F.3d 873, 876 n.1 (9th Cir. 2004).  (Docs. 34,
     82.)  However, the opinion is limited to a finding that Plaintiff alleged sufficient facts at the pleading stage
27   to proceed against Defendant Enenmoh and it is of no assistance to Plaintiff at the summary judgment
     stage.
28

9

1   whether the calcium in the fiber tabs could be the cause of his kidney stones and flank pain, but

2   Defendant told him no and directed him to continue taking the fiber tabs.  (*Id.*, ¶7.)

3       Since 2008, Plaintiff has been taking Lactulose, but it gives him extreme diarrhea and he

4   continues to have constipation.  (*Id.*, ¶10.)  At the recommended dose, Lactulose does not work

5   but an increase in dosage leads to diarrhea.  (*Id.*)

6       Other doctors ordered Metamucil for Plaintiff, and when he stopped taking the fiber tabs,

7   his flank and pelvic pain gradually began to go away.  (*Id.*, ¶¶11, 12.)

8       Plaintiff drinks five sixteen-ounce cups of water a day, and to clean out his system, he goes

9   one, two, and sometimes three days without food, drinking only water.  (*Id.*, ¶¶13, 14.)  Plaintiff

10  also exercises regularly, although he has slowed down due to back pain; and he denies getting

11  adequate fiber via prison meals.  (*Id.*, ¶¶15, 16.)  Plaintiff contends that he has internal

12  hemorrhoids as a result of inadequate dietary fiber.  (*Id.*, ¶17.)

13      Plaintiff has suffered from abdominal and rectal pain from 2007 to the present, and he

14  suffered from flank and pelvic pain from 2007 to early 2009.  (*Id.*, ¶18.)  In addition, Plaintiff

15  suffers pain when he wipes due to diarrhea.  (*Id.*)

16      In his deposition, Plaintiff testified that he suffers from constipation approximately four

17  times a week, and when he is constipated, it causes him stomach and rectal pain.  (Doc., 91, Pl.

18  Depo., 121:16-122:24.)  Plaintiff estimated the pain to be a 6 on a scale of 1-10, and the pain was

19  relieved by having a bowel movement.  (*Id.*)  Plaintiff tried fiber tabs, docusate sodium (Colace),

20  milk of magnesia, Lactulose, and Metamucil, and he was given enemas on occasion, but only

21  Metamucil relieved his constipation.  (*Id.*, 86:1-22.)

22      In addition, Plaintiff submits numerous medical records documenting his treatment and his

23  physicians' requests to prescribe non-formulary Metamucil, and the declarations of three former

24  cellmates attesting to their observations of bouts of diarrhea Plaintiff had after taking Lactulose in

25  2010 and 2012.  (Doc. 80, Exs. F, G, L, M, N, P, Q, E2.)

26  **D.   <u>Legal Standard</u>**

27      The Eighth Amendment's prohibition against cruel and unusual punishment protects

28  prisoners not only from inhumane methods of punishment but also from inhumane conditions of

confinement.  *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted).  While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain.  *Morgan*, 465 F.3d at 1045 (citing *Rhodes*, 452 U.S. at 347) (quotation marks omitted).

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, *Morgan*, 465 F.3d at 1045 (quotation marks omitted).  To maintain an Eighth Amendment claim, inmates must show deliberate indifference to a substantial risk of harm to their health or safety.  *E.g.*, *Farmer*, 511 U.S. at 847; *Thomas v. Ponder*, 611 F.3d 1144, 1151-52 (9th Cir. 2010); *Foster v. Runnels*, 554 F.3d 807, 812-14 (9th Cir. 2009); *Morgan*, 465 F.3d at 1045; *Johnson*, 217 F.3d at 731; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

For claims arising out of medical care in prison, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent."  *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)).

The existence of an injury that a reasonable doctor would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, and/or the existence of chronic or substantial pain are indications of a serious medical need.  *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citation omitted).

Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference."  *Wilhelm*, 680 F.3d at 1122 (citing *Jett*, 439 F.3d at 1096).  The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care.  *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012) (citation and quotation marks omitted); *Wilhelm*, 680 F.3d at 1122.  Deliberate

indifference may be shown "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Wilhelm*, 680 F.3d at 1122 (citing *Jett*, 439 F.3d at 1096) (internal quotation marks omitted).

**E.      Findings**

**1.      Objective Element – Existence of Serious Medical Need**

Defendant argues that there is no evidence Plaintiff suffered from an objectively serious medical need. Defendant contends that Plaintiff's test results and examinations demonstrate he was generally healthy, his constipation was neither severe nor extraordinary, and while his twice weekly bowel movements were of concern to him, they were within normal limits. Defendant also contends that Plaintiff reported only mild pain and discomfort, which is insufficient to support a claim; the documents Plaintiff relies upon confirm mild and occasionally moderate constipation; and Plaintiff offers no evidence that his constipation caused him to suffer any medical problems.

As an initial matter, Plaintiff is a lay witness who may testify only to facts which are rationally based on his perception and which do not require scientific, technical, or other specialized knowledge. Fed. R. Evid. 701. As a result, Plaintiff's sworn allegations and deposition testimony that fiber tabs caused (1) pain in his flank, groin, hernia, and leg; (2) kidney stones; and/or (3) pelvic calcification do not constitute admissible evidence; and his beliefs that he had internal hemorrhoids caused by constipation and that his neck tumor was the result of constipation are likewise inadmissible. However, Plaintiff is competent to testify regarding what constitutes, for him, normal and abnormal bowel movements; whether, as a result of his constipation, he experienced pain; and whether a particular prescription medication did or did not work to relieve his constipation. These are all facts which are within a lay witness's perception and which do not require medical expertise.

The Court may not weigh the evidence and here, there is evidence in the record that Plaintiff has suffered from chronic constipation for years. While Defendant describes it as merely mild or moderate and not particularly painful, Plaintiff describes it as painful and there are some medical records supporting Plaintiff's position that the condition caused him pain, in addition to

his verified complaint, declaration, and deposition testimony.[5]  (Ex. P to Enenmoh Decl., pp. 73, 74, 80, 81.)  Furthermore, while less frequent or even infrequent bowel movements may be normal for some individuals, Plaintiff has offered evidence that daily bowel movements are normal for him and he experiences pain when he is constipated.  The Court would have no difficulty concluding that isolated bouts with constipation do not rise to the level of a serious medical need, but the Court declines to find that, as a matter of law, chronic, painful constipation does not rise to the level of a serious medical need.

In this Circuit, routine discomfort resulting from incarceration does not constitute a serious medical need, *Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994), but a condition a reasonable doctor would find important and worthy of comment or treatment, and the existence of chronic or substantial pain are indicators of a serious medical need, *Wilhelm*, 680 F.3d at 1122; *Lopez*, 203 F.3d at 1131; *Doty*, 37 F.3d at 546.  Viewing the evidence in the light most favorable to Plaintiff, he repeatedly sought medical treatment for constipation, doctors repeatedly prescribed different medications to treat the condition, the condition persisted for years, and the condition caused him stomach and rectal pain.  As a result, the Court finds that Plaintiff has submitted sufficient evidence to raise a triable issue of fact regarding whether or not his chronic, painful constipation rose to the level of an objectively serious medical need, which precludes Defendant from entitlement to judgment as a matter of law on this element.[6]

## 2.   Subjective Element - Deliberate Indifference

"A difference of opinion between a physician and the prisoner – or between medical professionals – concerning what medical care is appropriate does not amount to deliberate indifference."  *Snow*, 681 F.3d at 987 (citation omitted).  "To show deliberate indifference, the

---

[5] Some of the medical records postdate the filing of this action, as Defendant points out, but Plaintiff has described his condition as ongoing since 2006.  Further, Plaintiff's sworn allegations and deposition testimony are sufficient, without more, to create a disputed issue of fact.

[6] While Defendant argues that Plaintiff has no admissible evidence his constipation led to other medical problems, this case does not involve a mere delay in treatment necessitating a showing of further harm.  *Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994); *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  Plaintiff's constipation *is* the medical problem at issue, and in any event, the needless suffering of pain may be sufficient to demonstrate further harm.  *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002).

1    plaintiff must show that the course of treatment the doctors chose was medically unacceptable

2    under the circumstances and that the [defendant] chose this course in conscious disregard of an

3    excessive risk to plaintiff's health." *Id.* at 988 (citation and internal quotation marks omitted).

4        However, the deliberate indifference standard "is less stringent" in medical care cases

5    "because the State's responsibility to provide inmates with medical care ordinarily does not

6    conflict with competing administrative concerns," *id.* at 985 (citation and internal quotation marks

7    omitted), and courts "need not defer to the judgment of prison doctors or administrators," *id.* at

8    985-86 (citation and internal quotation marks omitted).   Furthermore, deliberate indifference may

9    be found where the reason for the defendant's action or inaction is unrelated to the prisoner's

10   medical needs, *Snow*, 681 F.3d at 987; *Jett*, 439 F.3d at 1097 (citation omitted), and a *complete*

11   denial of medical care is not required to show deliberate indifference, *Lopez*, 203 F.3d at 1132.

12       At issue here is whether there is sufficient evidence from which a trier of fact might

13   reasonably find that Defendant Enemoh's decision not to prescribe Metamucil once it became

14   non-formulary and Defendant's subsequent decision, as CMO, to deny Plaintiff's treating

15   physicians' requests to prescribe Metamucil amounted to deliberate indifference.   At the risk of

16   belaboring the point, the Court again notes that it may not weigh the evidence or assess the

17   credibility of witnesses; it may determine only whether there is a genuine issue for trial and in

18   doing so, it must draw all inferences in the light most favorable to Plaintiff, who is the nonmoving

19   party. *Soremekun*, 509 F.3d at 984.

20       The Court finds the question to be close in light of Defendant's evidence, in the form of

21   two expert opinions, that Metamucil does not work uniquely, that they did not find Plaintiff had a

22   medical need for Metamucil, that Plaintiff received appropriate treatment for his condition, and

23   that there is no evidence of clinical deterioration in the absence of Metamucil.[7]   (Enenmoh Decl.,

---

[7] Plaintiff's objection to the declaration of Dr. Barnett on the grounds of bias and lack of personal knowledge does not
have merit. (Doc. 79, Opp., 16:9-14.)  Dr. Barnett is a medical doctor licensed by the State of California and board
certified in family medicine, and as such, he is qualified to offer his opinion, as an expert witness, on Plaintiff's
medical problems, the appropriateness of the medical treatment provided, and all other related medical issues.  Fed. R.
Civ. P. 702, 703.  Plaintiff's argument that Dr. Barnett is biased due to his employment by CDCR goes to credibility
rather than admissibility, and credibility is an issue for the trier of fact. *United States v. Garcia*, 7 F.3d 885, 889-90
(9th Cir. 1993) (citing *U.S. v. Little*, 753 F.2d 1420, 1445 (9th Cir. 1984)).  Similarly, Plaintiff's objection to the
declaration of Defendant Enenmoh lacks merit.  Defendant, as a medical doctor licensed by the State of California and
board certified in internal medicine, is qualified to testify as a medical expert. Fed. R. Evid. 702, 703.  The fact that

¶¶23-26; Barnett Decl., ¶3.)  The Court is mindful that a mere disagreement between Plaintiff and Defendant Enenmoh over the course of treatment prescribed, or between Defendant Enenmoh and Plaintiff's subsequent treating physicians, does not amount to deliberate indifference.

Here, however, there is evidence that Defendant Enenmoh denied Plaintiff Metamucil not because he believed it to be ineffective or inappropriate but because it became non-formulary.[8] There is nothing inherently improper about a formulary and individuals seeking medical care in the free world are routinely subject to similar cost-saving measures by both private insurers and the government.  However, a decision to deny treatment based on budgetary concerns rather than for reasons related to the inmate's medical needs does not shield prison officials from liability for deliberate indifference, *Snow*, 681 F.3d at 987; *Jett*, 439 F.3d at 1097; *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986), and there is evidence in the record from which a trier of fact might reasonably conclude that Defendant Enenmoh knew that Metamucil was effective in treating Plaintiff's constipation and that other treatments were not effective, but he nonetheless denied Plaintiff access to Metamucil because of its exclusion from the formulary.

Defendant Enenmoh attests that non-formulary medication can and is approved where there is a medical indication for it and the alternatives have been proven not to work, and here, there is evidence in the record from which a trier of fact might find that Plaintiff had a medical need for Metamucil and the alternatives tried did not work.  Defendant Enenmoh attests that he does not believe Plaintiff had a medical need for Metamucil and that Plaintiff's other treating physicians requested it only because of Plaintiff's self-reports that it worked, but an argument that a patient's self-reports are of no value and have no place in medical care would be untenable. Plaintiff is competent to testify as to which medications gave him relief from his constipation and which did not; Plaintiff is opining about a necessary and readily observable bodily function rather than some unobservable, internal function.  Moreover, Defendant was willing to prescribe

---

Defendant is not a urologist does not disqualify him as a medical expert; that fact merely goes to weight and/or credibility, which are issues for the trier of fact.  *Garcia*, 7 F.3d at 889-90 (citing *Little*, 753 F.2d at 1445).

[8]  There is evidence that Defendant Enenmoh concluded the medication was not necessary in light of alterative medications but none that Metamucil was ineffective or inappropriate.

Metamucil for Plaintiff before it became non-formulary, and Plaintiff's subsequent treating physicians filled out non-formulary drug request forms.   In those forms, the physicians documented therapeutic failure with formulary alternatives, as required.   Thus, there is a triable issue of fact regarding whether Defendant genuinely believed there was no medical need for Metamucil over other alternatives and he lacked the requisite subjective intent in denying it, *Snow*, 681 F.3d at 987-88, or whether he instead continued to deny Plaintiff access to Metamucil solely because of its non-formulary status, which could support a finding of deliberate indifference.[9] *Snow*, 681 F.3d at 987; *Jett*, 439 F.3d at 1097; *Jones*, 781 F.2d at 771.

## IV.   **Recommendation**

For the reasons set forth above, the Court finds that there exist triable issues of fact regarding whether Plaintiff's chronic constipation constituted a serious medical need and if so, whether Defendant Enenmoh's decision not to prescribe or authorize Metamucil for Plaintiff once it became non-formulary amounted to deliberate indifference.   Accordingly, the Court HEREBY RECOMMENDS that:

1.     Defendant Enenmoh's motion to file amended declarations, filed on December 6, 2012, be GRANTED;

2.     Defendant Enenmoh's motion for summary judgment, filed on October 1, 2012, be DENIED; and

3.     This matter be set for jury trial.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).   Within **twenty (20) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.   Local Rule 304(b).   The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."   The parties are advised that

---

[9] The availability of Metamucil from the canteen in 2012 is immaterial to the earlier events at issue in this action, but the Court notes the absence of evidence that Plaintiff has the ability to purchase the medication but chooses not to do so.  While Plaintiff's current trust account balance is unknown, Plaintiff had no funds in his account in 2008 when he sought leave to proceed in forma pauperis in this action, and Plaintiff testified at his deposition that he does not buy anything from the canteen because he does not have funds.  (Doc. 7; Pl. Depo., 88:13-14.)

failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **July 31, 2013**                                    **/s/ Sheila K. Oberto**
                                                         UNITED STATES MAGISTRATE JUDGE

17